# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| v. | ) No. 06 CR 896 |
| | ) |
| SALVADOR ROSALES | ) Wayne R. Andersen |
| | ) District Judge |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of defendant Salvador Rosales for judgment of acquittal or for a new trial. For the following reasons, the motion is denied.

## BACKGROUND

After a multi-week jury trial, defendant was found guilty of: (I) conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One); (ii) distribution of 500 grams or more of cocaine (Counts Four and Seven); (iii) distribution of cocaine (Count Six); and (iv) possession with intent to distribute 500 grams or more of cocaine (Count Eight).

During that trial, the jury heard overwhelming evidence of defendant's guilt. What became clear at trial was that defendant regularly supplied wholesale quantities of cocaine to defendant Gaya at locations in Summit, Illinois, often times by "fronting," without requiring Gaya to provide payment immediately. The evidence revealed that Gaya, a member of the Latin Kings street gang, distributed large quantities of cocaine to Latin Kings and others in the Chicago and Summit area. The evidence showed that Gaya received cocaine from Rosales, and, at times, other Latin Kings, including cooperating witness Jesse Guajardo.

Jesse Guajardo testified at trial and explained that he understood Rosales to be a major

supplier of cocaine to Gaya over the years. As Guajardo explained, he also supplied Gaya at times when Guajardo received cocaine from his suppliers. Likewise, Gaya supplied Guajardo at times when Guajardo needed cocaine. Guajardo understood that Gaya received cocaine from Rosales, both because Gaya said so and because at times Guajardo saw Rosales supply Gaya with cocaine. Guajardo testified that in Title III intercepted telephone calls between himself and Gaya in October 2004 through early 2005, they routinely exchanged cocaine with each other. When Guajardo needed cocaine from Gaya, he understood from Gaya that it was coming from Rosales.

By 2006, Guajardo was cooperating with the ATF investigation and wore a wire against Gaya and Rosales. On September 13, 2006, Guajardo ordered a half-kilogram of cocaine from Gaya. Later in the day, Rosales delivered a kilogram of cocaine to Gaya, who then split it into halves and gave approximately one-half to Guajardo and kept one-half for himself.

The evidence revealed that during Gaya's meetings with Guajardo while Guajardo was cooperating, Gaya made several incriminating statements about his drug dealing with Rosales. For instance, on July 18, 2006, Gaya and Guajardo talked about Gaya's cousin, Zyneida Rodriguez, getting arrested while in possession of a kilogram of Gaya's cocaine. Gaya had received the cocaine from Rosales. Gaya told Guajardo that he was "paying him [Rosales] little by little, you know. I paid him like six stacks."

On September 13, 2006, when Rosales delivered a kilogram of cocaine to Gaya which was split with Guajardo, Gaya made several statements about his cocaine trafficking. In discussing Rosales, Gaya said that he owed Rosales for "two bricks and he ain't sweatin' me for the money." Gaya then referenced nine kilograms of cocaine that had apparently been stolen from Rosales. Later in the conversation, Gaya told Guajardo, when referring to Rosales, "I owe

2

him for two bricks because of my cousin [Zyneida Rodriguez], but boy, believe me he used to hit me with 15, 10, you remember . . . ."

Later in the day, as they gathered the money to pay Rosales, Gaya and Guajardo spoke again. Gaya recounted an event in which sheriff's police searched his home on Southwest Highway looking for a suspect and failed to find "five bricks ... by the stove" that Gaya had. According to testimony at trial, Gaya lived on Southwest Highway in 2003 and Guajardo was there a handful of times when Rosales supplied Gaya with cocaine. Gaya and Guajardo then met with Rosales in a recorded meeting.

On October 18, 2006, Guajardo purchased a kilogram of cocaine from Rosales. That transaction was captured on tape, played to the jury, and admitted to by Rosales on the stand. Moreover, on December 5, 2006, at the time of Rosales' arrest, law enforcement officers found four kilograms of cocaine hidden in a trap compartment of one of Rosales' vehicles - a blue Honda. The car was in the garage of an apartment building Rosales owned in Summit, Illinois.

Gaya also testified at trial. He claimed not to have any cocaine trafficking relationship with Rosales and instead claimed that a "Chava" with whom he dealt was actually another individual (who was in jail for much of the relevant time period). Rosales also testified at trial. He testified about his relationship with Gaya and denied involvement in drug trafficking.

## **DISCUSSION**

Defendant now raises six arguments in his motion for acquittal or for a new trial. First, he claims that the Court violated his right to counsel during an overnight recess in the middle of defendant's cross-examination by the government. Second, he argues that the Court abused its discretion by permitting the government's cooperating witness to testify about his understanding of certain conversations. Third, defendant asserts that the Court abused its discretion by

sustaining objections to defense counsel's closing argument. Fourth, defendant claims that the Court abused its discretion by limiting questioning of the cooperating witness's post-arrest silence after a previous arrest. Fifth, defendant maintains that this Court erred when it allowed the government to question the defendant concerning a claimed friend of his named "El Gordo." Finally, defendant argues that he should be acquitted as a matter of law of Count One. We will address each argument in turn.

### I. The Court Did Not Abuse Its Discretion By Denying Defendant Contact With His Lawyer On A Single Issue In The Middle Of Defendant's Cross-Examination

Defendant first argues that the Court improperly infringed upon his right to communicate with his attorney by denying him the opportunity to discuss a subject relevant to his defense (phone records) during an overnight recess. We disagree for several reasons. First, defendant affirmatively waived this argument by withdrawing his motion for a mistrial. Second, the Court did not impermissibly limit defendant from having any contact with his lawyer during the overnight recess–it simply limited contact for one evening on a very specific evidentiary issue that arose in the middle of defendant's cross-examination. Thus, the Court appropriately applied the Supreme Court's ruling in *Perry v. Leeke*, 488 U.S. 272, 284 n.8 (1989) (judge may permit consultation between counsel and defendant but forbid discussion of ongoing testimony). Third, nothing precluded defendant from examining the phone records after the overnight recess and testifying about them or calling other witnesses to testify if he thought it was in his interest. Tactically, he chose not to do so. Finally, even if any error occurred here, it was harmless.

#### A. Facts

At issue is the government's use of phone records of September 13 during the cross-examination of defendant. The defendant claims that his counsel previously asked the

government for the phone records of September 13, but he did not receive them. The government claims that it made no such promises about records from September 13 before trial because it did not subpoena those phone records until after the government had rested and as the defense began to put on a case. As soon as the government reviewed the documents on the morning of May 16, it used them as a reference in the cross-examination of co-defendant Jose Gaya. The government then sought to examine defendant about the phone records. Defense counsel objected to the government's use of government exhibit 68, which contained phone records from the September 13 period, and the jury was excused for the day. The parties and the Court then had a discussion outside of the jury's presence, and defense counsel offered to have defendant excused from the courtroom because the parties were discussing a matter concerning his potential testimony. Defendant was so excused.

Defense counsel then argued that the government had acted improperly by failing to produce the phone records in question until defendant was cross-examined about them. Defense counsel also claimed that the government had reneged on a promise it had made to produce the records. Government counsel argued that he had made no such promise. The Court then postponed the matter until the following morning.

Defense counsel then asked for permission to speak to his client about the phone records. The government objected to defendant talking about his testimony on this issue with his lawyer while his cross-examination was on-going. The Court agreed and told defense counsel not to discuss the substance of defendant's testimony with him, including the phone records that night. The Court, however, clarified that defense counsel could meet with his client but that he just could not discuss the substance of the defendant's testimony while it was on-going.

The next morning, the Court announced that it would bar cross-examination on the phone

records at that point. Defense counsel then asked that the jury be instructed to disregard the phone records, but when the Court suggested that it would be best not to remind the jury of the records' existence, defense counsel withdrew his suggestion.

The parties later returned to the issue, and the Court ruled definitively on the use of the phone records holding that it would not let the government use the phone records unless the defendant agreed to their use. The Court then asked defendant's counsel "[a]nd I assume, Mr. Brindley, that that moots out the motion for a mistrial?" Tr. 1958. Defense counsel responded, "[y]es, your Honor." The trial then proceeded without any testimony about defendant's use of telephones.

### B. The Court Did Not Abuse Its Discretion

#### 1. Defendant Has Waived This Issue

As mentioned above, after sustaining defendant's objection to the use of the phone records by the government, the Court asked defense counsel if his motion for a mistrial was moot, and defense counsel responded in the affirmative. Tr. 1958. At no other point in the trial, which continued for several days and involved the defendant calling five additional witnesses, did defendant seek a mistrial or any other relief on this issue. Accordingly, defendant has affirmatively waived any further claim he might have had concerning this issue.

A waiver "arises from an intentional relinquishment of a right." *United States v. Clarke*, 227 F.3d 874, 880 (7th Cir. 2000). *See also United States v. Johnson*, 223 F.3d 665, 667 (7th Cir. 2000); *United States v. Perry*, 223 F.3d 431, 433 (7th Cir. 2000). Waived errors are unreviewable. *Clarke,* 227 F.3d at 881; *Perry,* 223 F.3d at 433.

In this case, defendant affirmatively and strategically withdrew his mistrial motion. He could have renewed the motion, but he chose not to. Now that the jury has convicted him on all

counts, he seeks a do-over. Because defendant intentionally relinquished his rights by withdrawing his motion after he got the result he sought, he cannot now seek review of any alleged errors committed by this Court at trial on the phone records issue. Therefore, this issue has been waived.

### 2. The Court Was Within Its Discretion To Limit Contact Between The Defendant And His Counsel During Cross-Examination On One Issue

Second, the Court was well within its discretion to limit contact between the defendant and his counsel on matters regarding his cross-examination while the testimony was on-going. See *Perry v. Leeke*, 488 U.S. 272, 284 n.8 (1989). The Court did not bar the defendant from access to his counsel during the overnight recess; instead, it barred defendant from discussing the subject matter of his testimony concerning the phone records at issue until the Court could sort the issue out. The Court viewed this matter as a two-step process. First it wanted to decide the evidentiary issue of the admissibility of the records. The Court put off the issue of defense counsel's ability to confer with his client about the records until it decided whether there was going to be cross-examination on the subject. When the Court ruled that the government was barred from eliciting information about the phone records, the second inquiry was unnecessary. The defense thereafter could confer with his client about the records because the Court had prohibited the government from questioning the defendant on the subject.

In *Perry v. Leeke*, the Supreme Court ruled that a state trial court's order forbidding the defendant from conferring with his lawyer at all during a 15 minute afternoon recess between direct examination and cross examination did not violate the defendant's Sixth Amendment right to assistance of counsel. *Leeke*, 488 U.S. at 283-84. The Court held that "when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is

7

testifying." *Id.* at 281-82. The Court also noted that "the judge may permit consultation between counsel and defendant during such a recess, but forbid discussion of ongoing testimony." *Id.* at 284 n.8.

In this case, the Court appropriately followed the law as laid out by the Supreme Court. The Court allowed contact between the defendant and his counsel, but simply forbade discussion between lawyer and client about the phone records until the Court could sort things out. Therefore, the Court was well within its discretion regarding this matter.

### 3. The Defendant Made A Strategic Decision Not To Use The Records

Moreover, after making its ruling, the Court did not forbid the defendant and his counsel from conferring about the phone records. Far from it, the Court contemplated that the defendant would consider his options and proceed: "Or I suppose now if the parties want to do anything to further open the door, you could do it." Tr. 1957. Defendant had several days if he wished to use the phone records in his case. He chose not to do so. Defendant made a strategic decision not to pursue the phone records after the Court suppressed their use by the government.

### 4. Any Error Which May Have Occurred Was Harmless Error

Finally, even if this Court were to conclude that it erred in forbidding defendant and his counsel from discussing his testimony concerning the phone records during the evening break, such an error is subject to harmless error analysis.

Only in rare cases has the Supreme Court held that an error is structural, and those are cases in which the error "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Washington v. Recuenco*, 126 S. Ct. 2546, 2551 (2006). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to

harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 8 (1999). Structural error has been found only in cases involving complete denial of counsel, a biased trial judge, racial discrimination in the selection of the grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *See Recuenco*, 126 S. Ct. at 2551 n.2. No such case exists here.

In analyzing the evidence heard by the jury, it was overwhelming. Among other things, the defendant was caught on tape selling a cooperating witness a kilogram of cocaine in October, 2006. Defendant was caught on tape several other times discussing cocaine trafficking with the cooperating witness, discussing police intelligence about the Latin Kings, and discussing other criminal matters. In addition, his co-defendant Jose Gaya was caught on tape repeatedly discussing all of the cocaine he had received over the years from "Chava." It was the government's position that the "Chava" to whom Gaya referred was the defendant. The defendant took another position, which was severely undercut by the fact that the "Chava" at issue, Salvador Garcia, was in jail for a substantial period of time during the drug trafficking at issue. Defendant's position was also undercut by his own testimony. The jury was able to assess defendant's credibility, and they concluded relatively quickly that defendant was guilty of all charges. Thus, if any error did occur, it was harmless, given the overwhelming evidence against the defendant.

## II. The Court Did Not Abuse Its Discretion In Permitting The Cooperating Witness To Testify About His Understanding Of Certain Conversations

Defendant next objects to the testimony of the cooperating witness concerning his understanding of certain statements and events. Out of the days of testimony involving cooperating witness Jesse Guajardo, the defendant cites six examples of this alleged practice

9

involving the cooperating witness. Each of those six instances involved the witness providing his understanding of a particular conversation that was captured on tape. The Court did not abuse its discretion in admitting such evidence. *See United States v. Dominguez*, 992 F.2d 678, 680-81 (7th Cir. 1993).

>Federal Rule of Evidence 701 provides
>
>If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The first requirement, that the testimony of the cooperating witness be rationally based on his own perceptions, has been met here. *See United States v. Allen*, 10 F.3d 405, 414 (7th Cir. 1993). The cooperating witness was a participant in the conversations with defendant and testified as to his understanding of their communications. *See United States v. Kozinski*, 16 F.3d 795, 809 (7th Cir. 1994). In addition, as a self-admitted drug dealer and gang member who lived in the same neighborhood as defendant and his-co-defendant and who associated himself with them, the cooperating witness had sufficient personal knowledge of the subjects discussed and the persons involved. *See United States v. Saulter*, 60 F.3d 270, 276 (7th Cir. 1995) ; *United States v. Rollins*, 544 F.3d 820, 831-33 (7th Cir. 2008). Therefore, the testimony of the cooperating witness was rationally based on his own perceptions.

The second requirement of Rule 701 is that the testimony be helpful to the jury's understanding of the issues at trial. The conversations the cooperating witness discussed included code words, and the six passages to which defendant objects are replete with instances of code. The Seventh Circuit has repeatedly authorized such testimony. *United States v. Estrada*, 39 F.3d 772, 773 (7th Cir. 1994) (affirming witness's interpretation of conversations he had with

defendant because the conversations "included code words for the negotiation of cocaine");

*United States v. Hughes*, 970 F.2d 227, 237 (7th Cir. 1992) (individuals involved in narcotics transactions tend to speak in coded terms); *United States v. Zanin*, 831 F.2d 740, 744 (7th Cir. 1987) ("conversations regarding drug transactions are rarely clear"). Therefore, the testimony of the cooperating witness was helpful to the jury's understanding of the issues at trial.

Accordingly, this Court did not abuse its discretion in allowing the testimony of the cooperating witness concerning his understanding of certain statements and events.

### III. The Court Did Not Abuse Its Discretion By Sustaining Objections To Defense Counsel's Closing Argument

Defendant next argues that the Court abused its discretion by sustaining government objections to defense counsel's closing argument. Defendant first argues that the Court improperly sustained the government's objection when defense counsel was arguing about what evidence did or did not constitute reasonable doubt during closing arguments.

During the exchange, immediately prior to the government's objection, the defendant's counsel argued as follows:

> The Government has maintained in their final argument that El Gordo is made up, that he is a fiction. But the Government's duty is to prove it, ladies and gentlemen, prove it beyond a reasonable doubt. Okay.
> * * * *
> Salvador Rosales gave you a coherent account about how this car was rented and where this car was placed. And the Government failed to disprove it and that leaves us, logically, with reasonable doubt. It is a logical necessity that if they can't get - prove the existence of El Gordo, the man would never -

Tr. 2345-46.

The government objected at sidebar that defendant's counsel was essentially defining reasonable doubt because the government has no burden to "prove it .... prove it beyond a

11

reasonable doubt" that "El Gordo is made up." *See United States v. Fruth*, 36 F.3d 649 (7th Cir. 1994) (district court did not abuse its discretion in interrupting defendant's closing statement when he was characterizing the meaning of the "reasonable doubt" standard); *United States v. Blackburn*, 922 F.2d 666, 668 (7th Cir. 1993) (jury should be given no instruction as to the meaning of "reasonable doubt"). Instead, the government's burden is to prove the charges against a particular defendant beyond a reasonable doubt. Nevertheless, the Court did not sustain the government's objection, nor did it instruct the jury to disregard defendant's counsel's argument. Therefore, no error occurred regarding this objection.

Defendant also assigns error to the Court's sustaining an objection to the following argument:

> Ladies and gentlemen, the one thing I tell you today is that Salvador Rosales today remains unafraid, just as much today as he was unafraid on day one. Salvador Rosales is not afraid because he knows no matter how many resources they put in, no matter how many recordings they make, no matter what they do, they can't provide a plea agreement or a sweetheart deal that will buy off the truth.

Tr. 2440.

We do not believe that the Court abused its discretion during this segment of closing argument either. We find that the government's objection was proper. The government objected because the argument--which came on the heels of another argument by defendant's counsel in which he inferred that the government would offer "deals" to people to perjure themselves--suggested that the government was paying for perjured testimony. That argument was outside the record and outside the evidence. Thus, because the argument was improper, the government rightfully objected. *See United States v. Tomes*, 809 F.2d 429, 437-38 (7th Cir. 1987) (characterizing defense counsel's closing as "outrageous" when counsel accused the government

12

of "preparing," "rehearsing," and "practicing" its witnesses and "juicing up" a defendant's confession). Therefore, we find that the Court was well within its discretion to sustain the government's objection.

However, even if the government's objections were found to be improper, we find that the objections did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *See United States v. Lahey*, 55 F.3d 1289, 1299 (7th Cir. 1995). Moreover, any error is harmless, given the overwhelming evidence of defendant's guilt, as described above. For these reasons, we reject defendant's claim that the Court abused its discretion by sustaining objections to defense counsel's closing argument.

**IV.     The Court Did Not Abuse Its Discretion By Limiting Questions About The Cooperating Witness's Post-Arrest Silence After A Prior Arrest**

Defendant next argues that the Court erred by limiting his questions to the cooperating witness about the witness's refusal to make a statement to law enforcement after a prior arrest in Texas. We disagree.

Federal Rules of Evidence 608, 609, and 613 all provide boundaries for the proper cross-examination of witnesses. No federal rule allows for the type of questioning sought here. Indeed, questions about a witness's prior criminal history are normally confined to the fact of the conviction-- not background about the arrest. If the witness did indeed make statements during or after an arrest, then those statements could perhaps be tested through the lens of Rule 613 (Prior Statements of Witnesses). But, in this case, the witness made no statement, and the defense was given free reign to question the witness about his previous convictions and prior bad acts committed by the witness.

We find that the Court did not abuse its discretion in sustaining objections to the

13

questioning of the cooperating witness. *See Kozinski*, 16 F.3d at 809 ("We will only reverse a trial court's evidentiary ruling if it abused its discretion"). First, the Federal Rules of Evidence provide no basis for such questioning of a witness's post-arrest silence, and the Supreme Court's decision in *Doyle v. Ohio*, 426 U.S. 610 (1976) also precludes such questioning. Moreover, we properly cut off the questioning when it got to attempts to question the witness about his exercise of his constitutional right not to speak to law enforcement at the time of his arrest on state charges in Texas. This is particularly so given the Supreme Court's ruling in *Doyle,* which provides that the government cannot comment on a defendant's exercise of his right to silence when that defendant refuses to make any statement after his arrest. *Doyle v. Ohio*, 462 U.S. 610 (1976). The same reasoning applies equally in the case of witnesses. In addition, had it been allowed, the questioning had the potential to confuse the jury because the members of the jury may not have been aware that an individual arrested by law enforcement has no obligation at all to say anything and indeed has a constitutional right to silence.

In short, this testimony was properly limited. The defendant can point to no case when such questioning was permitted. Moreover, both the defendant and his co-defendant crossed the witness extensively about their theory that he was protecting members of his family from law enforcement. This questioning, treading as it did on the witness's constitutional rights and running afoul of the Federal Rules of Evidence, was properly limited. Again, however, even if error on this point had been committed, any such error would have been harmless given the overwhelming evidence against the defendant. Therefore, defendant's argument on this point is denied.

## V. The Court Did Not Abuse Its Discretion By Permitting The Government To Question Defendant About His Alleged Friend "El Gordo"

Defendant next contends that the Court improperly permitted government questioning of him on cross-examination and improperly used the defendant's silence against him. We disagree.

In this case, defendant did not remain silent when questioned by law enforcement officers at the time of arrest. Instead, he made a statement. The evidence revealed that defendant made certain statements to ATF Special Agent Terry Jackson after his arrest. Agent Jackson testified that he asked defendant about the blue Honda Accord parked in the garage of one of the properties defendant owned. Tr. 1159. Defendant told Agent Jackson that it "wasn't his vehicle, that was a friend of his." Tr. 1159. Agent Jackson asked Defendant who the friend was, but he "didn't give [Agent Jackson] a name." Tr. 1159. Defendant also testified at trial, and he said on direct examination that the car belonged to his friend, "El Gordo." Tr. 1798 - 1800. On cross-examination, the government asked: "And when you were arrested by Agent Terry Jackson in this case, you never told him about this man El Gordo, did you?" Tr. 1867 - 1870.

Based on the foregoing, the government's questions were not a commentary on defendant's post-arrest silence, but rather constituted appropriate inquiry into the inconsistency between defendant's trial testimony and his statements after his arrest. The Court did not abuse its discretion in allowing these questions, as this line of inquiry is supported by Supreme Court and Seventh Circuit case law. *See Anderson v. Charles*, 447 U.S. 404, 406 (1980); *United States v. Santiago*, 428 F.3d 699, 703-04 (7th Cir. 2005) (affirming conviction involving cross-examination in which prosecutor "was not exploiting Santiago's silence but, rather, was probing the arguable inconsistency" between post-arrest statement and trial testimony); *Smith v.*

*Cadagin*, 902 F.2d 553, 558-59 (7th Cir. 1990).

For these reasons, we reject defendant's contention that the Court permitted the government to improperly question the defendant on cross-examination and use his silence against him.

## VI. The Evidence Was Sufficient To Establish That Defendant And Gaya Conspired

Defendant next claims that the verdict on Count One should be set aside because the indictment charges that defendant and Gaya conspired with themselves and others from 2000 to 2006, and Gaya was in jail from 2000 to 2002. Therefore, defendant argues that the jury could not have found that defendant and Gaya conspired between 2000 and 2006.

We disagree. The government is not put to the burden of proving that defendant conspired with others for every day from 2000 to 2006. A Seventh Circuit pattern jury instruction makes this clear. Instruction 5.08 states, in part, that "[t]o be a member of the conspiracy, the defendant need not join at the beginning . . .." Therefore, we deny defendant's request that the verdict on Count One be set aside.

Defendant also argues that the ATF engaged in "alteration and falsification of reports" and, according to defendant, "the alteration of reports constitutes reasonable doubt as a matter of law" which entitles him to an acquittal. The government, however, has a different view of the evidence, and Agent Jackson testified to it at trial. The defendant cross-examined Agent Jackson on the issue of his report writing, and reargued the point in his closing. The argument that defendant makes in his current motion is simply a regurgitation of that failed argument, which did not sway the jury.

The evidence at trial revealed abundant proof of the defendants' conspiratorial relationship. The government's theory of the case was that Gaya received cocaine on a regular

basis from defendant, who admitted that his nickname was "Chava." Gaya admitted all of this in recorded conversations and also admitted that he was fronted cocaine regularly by defendant. The government put on substantial evidence that others, including Jesse Guajardo and, on one occasion, ATF agents, witnessed Rosales supply Gaya with cocaine on a front. The government also discredited Gaya's claim that another "Chava" supplied him with cocaine and collected money from him for the cocaine because that other "Chava" was in jail during the times Gaya claimed to have received cocaine from him (but Rosales was not).

In any event, the jury could have discredited Guajardo's testimony or any of the other evidence at trial. It chose not to. We find that there is no basis for disturbing the jury's verdict.

## CONCLUSION

For the foregoing reasons, the motion of defendant Salvador Rosales for judgment of acquittal or a new trial [# 162] is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: July 1, 2009